IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CR-00202-M
Case No. 5:23-CV-00319-M

| | |
|---|---|
| JALEEL DUNCAN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | ORDER |

This matter comes before the court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 67] and the United States' Motion to Dismiss the § 2255 petition [DE 83]. The court finds that the petition, the United States' motion, and the record in this case conclusively show that Petitioner is entitled to no relief; therefore, no hearing is necessary pursuant to 28 U.S.C. § 2255(b). For the reasons that follow, the United States' motion to dismiss is granted and the petition is denied.

I.  **Case Background**

On April 28, 2020, Petitioner was charged by indictment with Possession With Intent to Distribute a Quantity of Heroin, Fentanyl, Cocaine, Cocaine Base (Crack), and Marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 1); Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count 3). DE 1. Petitioner pled not guilty to these charges on January 6, 2021. DE 32. On January 13, 2021, the United States filed a superseding indictment in which it added a charge of conspiracy to distribute and

possess with intent to distribute 100 grams or more of heroin. DE 33. On February 2, 2021, by agreement, Petitioner changed his plea to guilty to Counts 1 and 2 of the original Indictment, and the United States agreed to dismiss Count 3 and the Superseding Indictment. DE 44, 45. On May 17, 2021, Petitioner was sentenced to a total of 169 months in custody (109 months for Count 1 and 60 months consecutive for Count 2). DE 62.

Petitioner filed the present motion collaterally attacking his sentence on June 15, 2023, and (construed liberally) arguing that his counsel was ineffective in (1) failing to object to the drug weight attributed to him; (2) forcing him to plead guilty to what amounted to "illegal ghost dope"; (3) coercing him to plead guilty by promising a sentence of no more than ten years; and (4) failing to object to the court's upward variance at sentencing. DE 67. As to the timeliness of his motion, Petitioner asserts that he was transferred five times since his sentencing hearing "with no access to law operations" and recently learned that his lawyer had not filed an appeal on his behalf, as he originally believed. *Id.*

The United States responded by filing a motion to dismiss (and memorandum in support), in which it argues that the motion is untimely, having been filed more than a year after the applicable statutory deadline; pursuant to a written plea agreement, Petitioner waived his right to challenge his conviction or sentence in a collateral proceeding except based on certain limited grounds; Petitioner's claims, which he did not previously raise with this court or on appeal, have been procedurally defaulted; and Petitioner fails to plead sufficient facts to state a cognizable claim under § 2255.

Although provided the opportunity to do so, Petitioner did not file a response to the motion to dismiss or a reply in support of his motion. The court has reviewed the entire record is fully apprised.

## II. Legal Standards

Section 2255 provides that habeas relief should be awarded when:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). Once the petitioner has shown this, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) (quoting § 2255(b)).

The government may respond to a § 2255 petition by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138-39 (4th Cir. 2009).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the pleading and must draw all reasonable inferences in the pleader's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the pleader need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

3

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the non-movant's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that the non-movant's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Courts must view the well-pleaded facts in the light most favorable to the non-movant. *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

### III. Analysis

The United States argues first that the petition should be dismissed as untimely. Regarding timeliness, section 2255 provides:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;

4

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. "Normally, for a motion to be timely under § 2255(f), a petitioner must file for relief within one year of the date that his judgment of conviction becomes final." *United States v. Green*, 67 F.4th 657, 663 (4th Cir.), *cert. denied*, 144 S. Ct. 226, 217 L. Ed. 2d 100 (2023) (quoting *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017)). "Where, as here, a petitioner does not file a direct appeal, a conviction becomes final when the appeal period expires. *Id.* (citing *Whiteside v. United States*, 775 F.3d 180, 182 (4th Cir. 2014)).

In this case, Petitioner mentions nothing about whether the United States impeded his ability to file a timely motion or whether the Supreme Court recently recognized a right he asserts was violated. Petitioner claims that "new facts" arose after his conviction and sentence, in that he only recently learned that his counsel did not file an appeal as he had requested. However, Petitioner does not explain how such information was discovered through "due diligence." He filed the present motion more than two years after the appeal deadline and, other than mention that he had been transferred five times during that period, fails to explain why he could not have, at least, sent a letter to the court asking for a status on his case. The court finds the deadline applicable to this case is found in § 2255(f)(1), or, one year after Petitioner's conviction became final.

"A criminal conviction becomes final at the end of the appellate process—i.e., when the time for a direct appeal expires and the defendant has not noticed an appeal . . . ." *United States*

5

*v. Oliver*, 878 F.3d 120, 125 (4th Cir. 2017). Here, this court's judgment was entered on May 17, 2021 (DE 62), and the deadline for Petitioner to file a notice of appeal was May 31, 2021. *See* Fed. R. App. P. 4(b)(1). The present motion was filed on June 15, 2023, more than two years later. Accordingly, the motion is untimely unless Petitioner can demonstrate the deadline should be equitably tolled.

"A habeas petitioner 'is entitled to equitable tolling [of the statute of limitations] only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *United States v. Herrera-Pagoada*, 14 F.4th 311, 318 (4th Cir. 2021) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001) ("[E]quitable tolling is available only in 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

Petitioner claims that, from May 2021 to June 2023, he was transferred among facilities five times and did not have access to "law operations." DE 67 at 11. He also asserts that he had directed his counsel to file an appeal but learned only recently that his counsel did not do so. Neither of these explanations supports a finding that Petitioner had been pursuing his rights diligently but an extraordinary circumstance prevented him from filing his motion in a timely manner. Again, Petitioner does not assert that he was prevented from even the simple act of sending a letter to his counsel or to the court asking for a status of his case and/or any appeal that may have been filed; such act does not require any "access to law operations." The court finds Petitioner fails to demonstrate that the § 2255 deadline should be equitably tolled.

6

Finally, the court notes that the motion is purportedly signed by the Petitioner on January 28, 2022, and placed in the mail on February 4, 2022. DE 67 at 12. However, Petitioner completed the section concerning "timeliness" of his motion, which is required only "[i]f your judgment of conviction became final over one year ago." *See id.* at 11. Moreover, the envelope attached to the motion reflects that it was mailed on June 12, 2023. DE 67-1.

The court concludes that Petitioner's motion is untimely. In addition, the court agrees with the government that Petitioner failed to raise his claims before this court or on direct appeal.[1] Even if it were timely and procedurally proper, however, the court would dismiss the petition on other grounds.

A claim for ineffective assistance of counsel requires a showing of both "deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Discerning this objective standard entails consideration of "professional norms." *United States v. Cannady*, 63 F.4th 259, 265 (4th Cir. 2023).

Prejudice is shown if, but for the deficient performance, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Given the nuance involved in pretrial negotiations, courts strictly apply the *Strickland* standard

---

[1] To raise a defaulted claim on collateral review, a petitioner must show "cause" for the default and "prejudice" resulting from it, or he must demonstrate that he is "actually innocent." *Green*, 67 F.4th at 666 (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "To demonstrate cause for a procedural default, a petitioner must show there was 'some external impediment preventing counsel from constructing or raising the claim' at the time of conviction and direct appeal." *Id.* (citations omitted). "To establish prejudice, a § 2255 petitioner must show that the default 'worked to his actual and substantial disadvantage' and has 'constitutional dimensions.'" *Id.* at 667-68 (citation omitted). As set forth below, the determination of these questions overlaps in substantial part with an evaluation of the merits.

7

when evaluating claims for ineffective assistance of counsel at the plea-bargaining stage, and properly exercise their "limited role" with "judicial caution." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

Liberally construed, Petitioner argues that his counsel was ineffective in four respects: (1) failing to object to the drug weight attributed to him; (2) forcing him to plead guilty to what amounted to "illegal ghost dope"; (3) coercing him to plead guilty by promising a sentence of no more than ten years; and (4) failing to object to the court's upward variance at sentencing. DE 67. Petitioner's own testimony at his change of plea hearing and sentencing hearing belies these arguments.[2]

First, regarding counsel's alleged coercion and promise of a particular sentence, the Petitioner, at his change of plea hearing, testified as follows before he entered his guilty plea:

> THE COURT: Have you had an adequate opportunity to discuss the indictment and your case with your lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you, in fact, had those conversations?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you fully satisfied with your lawyer's legal services in your case?
>
> THE DEFENDANT: Yes, sir.
>
> \*\*\*
>
> THE COURT: Did you read and discuss the entire plea agreement with your lawyer before you signed it?
>
> THE DEFENDANT: Yes, sir.

---

[2] *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("a federal court may consider matters of public record such as documents from prior [ ] court proceedings in conjunction with a Rule 12(b)(6) motion").

8

THE COURT: Does this written plea agreement constitute in its entirety the whole agreement that you have with the government about your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand each term of the plea agreement?

THE DEFENDANT: Yes, sir.

\*\*\*

THE COURT: In paragraph 5(c) -- actually, in paragraph 5(a), the parties agree that the relevant, readily provable quantity of narcotics to be used in determination of the base offense level pursuant to United States Sentencing Guideline Section 2D1.1 is at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight. This is the equivalent of a level 30 base offense level. ... Do you understand that these agreements are persuasive but they're not binding on the court in its application of the advisory guideline range at sentencing?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Duncan, has anyone made any promise to you or anyone else that caused you to decide to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you or anyone else and thereby caused you to plead guilty?

THE DEFENDANT: No, sir.

\*\*\*

THE COURT: Do you understand that your lawyer's calculation of an advisory guideline range is only an estimate and that the court will determine the advisory guideline range at the sentencing hearing?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the court has the legal authority in some circumstances to impose a sentence that is more severe or less severe than the

sentence called for by the advisory guidelines range? The court can do so via a departure or a variance. Understand?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the court will determine your actual sentence?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that your sentence may be different from any estimate your lawyer or anyone else may have given you?

THE DEFENDANT: Yes, sir.

\*\*\*

THE COURT: Mr. Duncan, has anyone made any promise to you as to what your actual sentence will be?

THE DEFENDANT: No, sir.

\*\*\*

THE COURT: Mr. Duncan, have you answered all of my questions truthfully today?

THE DEFENDANT: Yes, sir.

Tr. 5-19, DE 75.

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted) (cleaned up). In light of such presumption, the defendant's sworn statements "present a formidable barrier in any subsequent collateral proceedings." *Id.* (citations omitted). "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made

during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Id.* (citations omitted).

Given Petitioner's testimony at the time he consummated the plea agreement, during which he expressed his understanding of the agreement's terms, his rights, and the consequences of pleading guilty, the court is not convinced by Petitioner's arguments more than two years later that defense counsel "forced" Petitioner to plead guilty and/or had made a promise to Petitioner that he would receive a sentence of "10 years max" (DE 67 at 7) if he agreed to plead guilty.

Moreover, Petitioner was advised both in writing (plea agreement) and orally by the court of the maximum penalties attached to each charge, and he expressed his understanding that such penalties could be imposed by the court at sentencing, notwithstanding the plea agreement. The Petitioner also expressed his understanding of the court's advisement, "If you plead guilty, the court may impose the same punishment as if you had pleaded not guilty and been convicted by a jury." Tr. 17: 22-44, DE 75. Petitioner points to nothing convincing this court that a jury would have acquitted him of the charges. Thus, Petitioner has failed to demonstrate that he has suffered prejudice due to any conduct by counsel concerning his guilty plea.

Likewise, the court is not persuaded that Petitioner suffered any constitutional violations by his counsel's "failures" to object to both the drug weight and an "upward" variance at sentencing. According to the presentence investigation report ("PSR"), probation calculated the drug weight attributed to Petitioner based on narcotics found on Petitioner's person at his arrest and on those which he described having purchased in his own statement to the police. PSR ¶¶ 8, 10-11, DE 54. Probation's calculation was consistent with the drug weight to which Petitioner agreed in the plea agreement. Agmt. ¶ 5(a), DE 45. Further, the court did not vary upward at Petitioner's sentencing; rather, the court sentenced Petitioner at the bottom of the range suggested

11

by the United States after the court granted the government's motion for downward departure. Tr. 31-32, DE 78. Thus, Petitioner could not have received ineffective assistance of counsel in these respects, "because counsel is not deficient in failing to raise a meritless argument." *Marsh v. United States*, Nos. 7:12-CR-138, 7:14-CV-131, 2015 WL 13735426, at *4 (E.D.N.C. Oct. 28, 2015), *recommendation adopted*, 2016 WL 591767 (E.D.N.C. Feb. 12, 2016); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that attorneys are "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel"). Put another way, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Furthermore, while true that defense counsel did not, in fact, lodge any objections to the PSR, Petitioner testified as follows:

> THE COURT: Mr. Duncan, have you discussed your presentence report with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any objections to the report that were not raised by your attorney?
>
> THE DEFENDANT: No, sir.

Tr. 4: 18-23, DE 78. The court concludes that Petitioner's allegations regarding defense counsel's performance at sentencing are insufficient to show it was either deficient or prejudicial to the Petitioner.

12

Finally, Petitioner contends that he directed his counsel to file an appeal. In the appellate context, a petitioner may demonstrate both deficient performance and prejudice by showing that counsel failed to file an appeal after the petitioner explicitly requested that counsel do so. *Bostick v. Stevenson*, 589 F.3d 160, 166–67 (4th Cir. 2009) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)). If counsel has adequately consulted with the defendant about whether to appeal, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *United States v. Fabian*, 798 F. Supp. 2d 647, 678–79 (D. Md. 2011) (quoting *Flores-Ortega*, 528 U.S. at 478).

Here, to the extent Petitioner argues that his counsel should have appealed despite having no grounds to do so, it is not ineffective assistance of counsel to fail to raise meritless arguments on appeal. *See Smith v. Robbins*, 528 U.S. 259, 287–88 (2000). Other than his Sixth Amendment right to effective assistance of counsel, Petitioner identifies no appealable issues. In fact, he waived his right to appeal or contest (in a post-conviction proceeding) any issues except those based on "ineffective assistance of counsel or prosecutorial misconduct not known to Defendant at the time of Defendant's guilty plea." Agmt. ¶ 2(c), DE 45. Other than regarding his ineffective assistance arguments, Petitioner does not contend that his plea was neither knowing nor voluntary, and the court has concluded that Petitioner has alleged no plausible violations of his Sixth Amendment right. *See supra*.

Additionally, to the extent Petitioner contends that his counsel failed to file a notice of appeal despite being instructed to do so, such argument is contradicted by the sworn declaration of his attorney, William Wood Webb, Jr. Decl. ¶ 9, DE 84. Moreover, Petitioner pled guilty pursuant to a plea agreement, which, as the Supreme Court has noted, may indicate a defendant's

13

desire to conclude judicial proceedings. *Flores-Ortega*, 528 U.S. at 480. Furthermore, due in large part to defense counsel's efforts and to Petitioner's substantial assistance (downward departure), Petitioner was sentenced to a custodial term at the bottom of the range suggested by the United States with its motion, which was significantly lower than the sentencing range originally proposed in the PSR. At the close of its pronouncement of the sentence, the court informed Petitioner:

> Jaleel Duncan, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary, or if there is some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.
>
> However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable, but if you believe the waiver is unenforceable, you can present that theory to the appellate court.
>
> With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered on the docket in your case. If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the Clerk of the Court will prepare and file a notice of appeal on your behalf.

Tr. 35: 19 – 36: 15, DE 78. Petitioner mentions nothing about whether he questioned or misunderstood the court's advisement, and its existence renders hollow Petitioner's claim of prejudice. Petitioner has failed to allege a plausible claim both that his counsel's performance with respect to his appeal rights was deficient and that he has suffered prejudice.

## IV. Conclusion

The United States has "conclusively show[n] that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner's motion is untimely. Even if it were timely, each of Petitioner's alleged claims fail to meet both prongs of *Strickland*. That is, Petitioner fails to establish that defense counsel forced or coerced Petitioner to plead guilty. Moreover, failing to raise a losing

14

argument does not fall below an objective standard of reasonableness and, even if Petitioner's counsel had raised Petitioner's proposed arguments, the court finds the outcome of the sentencing hearing would have been no different. Finally, Petitioner fails to establish that his counsel failed to file a requested appeal or that counsel's failure to do so prejudiced Petitioner. Accordingly, Petitioner does not allege a plausible claim of ineffective assistance of counsel in violation of the Sixth Amendment.

The court further finds that reasonable jurists would not find the court's treatment of any of Petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. *See Buck v. Davis*, 580 U.S. 100, 122 (2017); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The court therefore denies a certificate of appealability.

Petitioner's claims of ineffective assistance of counsel fail as a matter of law. Accordingly, the court GRANTS the United States' motion to dismiss [DE 82], DENIES Petitioner's Section 2255 petition [DE 67], and DENIES a certificate of appealability.

SO ORDERED this 20th day of February, 2025.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE